United States District Court
Southern District of Texas
**ENTERED**
June 27, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THERESSA F. FORD, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:18-cv-0924 |
| | § | |
| UNITED AIRLINES, INC., | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court in this disability discrimination and retaliation dispute is Defendant United Airlines, Inc.'s Motion to Dismiss in Part (the "Motion") [Doc. # 7]. *Pro se* Plaintiff Theressa F. Ford[1] filed a response, to which Defendant timely replied.[2] The Motion is now ripe for decision. Having considered the parties' briefing, the applicable legal authorities, and all pertinent matters of record, the Court concludes that the Motion should be **granted in part and denied in part**.

---

[1] Although she is proceeding in this case *pro se*, Plaintiff is an attorney licensed to practice in the State of Texas.

[2] *See* Plaintiff's Memorandum in Response to Defendant's 12(b)(6) Motion to Dismiss in Part ("Response") [Doc. # 15]; Defendant's Reply Brief in Support of its Motion [Doc. # 16]

I.  **BACKGROUND**

Plaintiff has been employed by Defendant since 2009.[3] In 2013, Defendant became aware that Plaintiff suffers from Lupus and has provided on-going, but unspecified, work accommodations as a result. On June 13, 2014, Plaintiff was in a serious car accident in which she injured her spine. According to Plaintiff, as a result of the accident, she "had difficulty using her right arm and right leg," "had difficulty walking without a limp," "could not stand for more than 5-10 minutes," and "could not lift even a pot on the stove to cook or bend to do household chores like laundry or make the bed."[4] At the time of the June 2014 accident, Plaintiff was working for Defendant as a "ramp employee."

Following the accident, Plaintiff took leave from her employment with Defendant. The Complaint does not specify the exact nature of the leave, or whether she or Defendant initiated the leave. In May 2015, Plaintiff's doctor

---

[3] In her Response, Plaintiff makes new allegations that were not asserted in her Complaint and attaches documents that were not attached to her Complaint. Plaintiff may not supplement her Complaint through her Response. *See Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents [the defendant] attached to the motion to dismiss that are central to the claim and referenced by the complaint"). Consequently, the background for this case is derived solely from the well-pleaded allegations in the Complaint. As explained hereafter, Plaintiff is granted leave to amend certain of her deficiently pleaded claims.

[4] Complaint [Doc. # 1], ¶ 9.

2

cleared her to return to work, but Defendant refused to reinstate her. At some point thereafter, Plaintiff was required to submit to a four-hour functional capabilities exam (FCE) with a doctor chosen by Defendant. According to Plaintiff, she was required to lift 99 pounds during the FCE even though Defendant only requires new "ramp employee" hires to be able to lift 50 pounds.

On August 14, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") for disability discrimination on the grounds that Defendant was making it more difficult for her to return to work because she was disabled. On August 17, 2015, Defendant's agent called Plaintiff and informed her that although she was able to lift between 60 and 70 pounds during her exam, she had failed the FCE because she was unable to lift 99 pounds. According to Plaintiff, she also was told that she would be required to remain on leave until Defendant's doctor cleared her to return to work. Plaintiff informed the caller that she recently had filed a charge of discrimination with the EEOC.

On August 19, 2015, Plaintiff received a call from one of Defendant's human resources representatives. Plaintiff alleges the representative told her that she could return to work without any additional medical testing, and that she would receive back pay to May 2015, when her own doctor had cleared her to return to work. Defendant allowed Plaintiff to, and Plaintiff did in fact, return to work on September 13, 2015.

Plaintiff filed this lawsuit on March 24, 2018. In her Complaint, Plaintiff asserts various claims under the Americans with Disabilities Act of 1990 (the "ADA"). By the Motion, Defendant seeks dismissal, at least in part, of each of Plaintiff's claims on the grounds that Plaintiff has failed to state a claim upon which relief can be granted.

## II. <u>LEGAL STANDARDS</u>

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citing *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Harrington*, 563 F.3d at 147. The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). When there are well-pleaded factual allegations, a court should presume they are true, even if doubtful, and then determine whether they plausibly give rise to an entitlement to relief. *Iqbal*, 556 U.S. at 679. Additionally, regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid

legal theory.  *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

III. **ANALYSIS**

Plaintiff asserts three distinct claims under the ADA in her Complaint: disability discrimination, failure to accommodate a disability, and unlawful retaliation.  Defendant has moved to dismiss all of Plaintiff's claims, at least partially, on the grounds that they are inadequately pleaded.  The Court addresses the sufficiency of Plaintiff's allegations with respect to each of her three claims in turn.

A. **Disability Discrimination**

Plaintiff's first claim against Defendant in her Complaint is for discrimination under the ADA.  Plaintiff alleges that she was discriminated against on the basis of her disability when Defendant unreasonably delayed her return to work by refusing to reinstate her after her doctor cleared her for active duty.  According to Plaintiff, Defendant imposed this delay by making it more difficult for her to obtain clearance from Defendant's doctors by requiring her to travel unusually long distances to see them and by mandating she meet a physical requirement more difficult than that required for ramp employees, namely, lifting up to 99 pounds.  Defendant responds that Plaintiff's allegations fail to support a reasonable inference that she was subject to an adverse employment action, a

5

necessary element of her disability discrimination claim. Defendant's response in this regard is not persuasive.

To state a *prima facie* case of disability discrimination, a plaintiff must allege that: (1) she has a disability, or was regarded as disabled; (2) she was qualified for the job; and (3) she was subject to an adverse employment decision on account of her disability. *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (citation omitted). Under the ADA, as in the Title VII context, adverse employment decisions include "only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007); *Mendoza v. City of Palacios*, 962 F. Supp. 2d 868, 872 (S.D. Tex. 2013) (same).

Defendant argues that Plaintiff merely alleges that she was subject to a standard reinstatement process and that she "does not allege any particular delay in the return-to-work process."[5] This argument contradicts Plaintiff's well-pleaded factual allegations that Defendant violated its own policies with respect to the distance Plaintiff was forced to travel to see Defendant's doctor and that Defendant did not reinstate her because she failed the FCE by not being able to lift 99 pounds,

---

[5] Response [Doc. # 15], ¶ 15.

which she alleges is an unnecessarily heavy amount of weight.[6]  In addition, Plaintiff does not allege in her Complaint that she was being compensated or receiving benefits at the time Plaintiff informed Defendant that her doctor had cleared her to return to work.  Taking as true all of Plaintiff's allegations, as the Court must for a motion to dismiss, the allegations in Plaintiff's Complaint support a reasonable inference that, at a minimum, Defendant deprived Plaintiff of compensation and benefits by unreasonably delaying her reinstatement for discriminatory purposes.[7]  Accordingly, Plaintiff's allegations support a reasonable inference that Defendant subjected her to an adverse employment decision on the

---

[6] *See, e.g.,* Complaint [Doc. # 1], ¶ 12(d) ("Requiring plaintiff to lift 99 lbs. to return to work is nearly 49 pounds more than defendant requires for any new hire in the same position.  No candidate applying for the same position Plaintiff holds (Ramp Services Employee) is required to this test.  Defendant's medical leave agent in Chicago called Plaintiff on August 17, 2015 stating Plaintiff failed the FCE because she did not lift 99 lbs. even though she lifted 60-70 lbs. in some of the categories.").

[7] Plaintiff alleges in her Complaint that when Defendant reinstated her she was told that she "would be paid back pay to May when her doctor released her." *Id*.  It is unclear from the allegations in the Complaint whether Plaintiff actually received any back pay.  To the extent Plaintiff was "made whole" for any delay in her reinstatement in terms of compensation and benefits, it is unclear that she can demonstrate that she was subject to an adverse employment decision within the meaning of the ADA.  *See, e.g., Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998) (finding that a delay in promotion was not an adverse employment action where the plaintiff received the promotion with retroactive pay and seniority); *Mylett v. City of Corpus Christi*, 97 F. App'x 473, 475 (5th Cir. 2004) ("A delay in promotion is not an adverse employment action where any increase in pay, benefits, and seniority are awarded retroactively.").  The Court does not resolve that question of fact here.

basis of her disability.  Plaintiff alleged sufficient facts to satisfy the third element of her disability discrimination claim and, consequently, the Motion is **denied** with respect to that claim.

### B. Failure to Accommodate

Plaintiff's second claim in the Complaint is for failure to accommodate under the ADA.  Plaintiff alleges that she requested that her job duties be limited to scanning baggage on four different occasions between August 2014 and February 2015 so that she could return to work.  According to Plaintiff, she was capable of scanning bags even during the period where she was unable to lift luggage.  Defendant argues that Plaintiff cannot establish a failure to accommodate claim because she does not allege facts that show, with respect to the position of ramp employee, she was a "qualified individual with a disability" when she requested her accommodation.  This argument has merit.

"To establish a failure to accommodate claim, the plaintiff must show that: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 442 (5th Cir. 2017) (quoting *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)) (internal quotation marks omitted).  In order for an individual to be

"qualified" for a position under the first element of this test, the individual must be able to "perform the essential functions" of the position "with or without reasonable accommodation." *Credeur v. Louisiana Through Office of Attorney Gen.*, 860 F.3d 785, 792 (5th Cir. 2017). "A function is 'essential' if it bears 'more than a marginal relationship' to the employee's job." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (quoting *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993)). Further, "[t]he ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Id.* at 698; *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999) (holding employer was not required to accommodate firefighter who could not fight fires); *see also Barber v. Nabors Drilling U.S.A., Inc.*, 130 F.3d 702, 709 (5th Cir. 1997) ("We cannot say that [an employee] can perform the essential functions of the job with reasonable accommodation, if the only successful accommodation is for [the employee] not to perform those essential functions.").

In her Complaint, Plaintiff describes baggage scanning as one of the non-lifting "essential functions" of the ramp employee role.[8] Plaintiff does not allege

---

[8] *See* Complaint [Doc. # 1], ¶ 9 ("Plaintiff was otherwise qualified to perform the essential functions of a ramp employee that did not require lifting such as scanning passenger luggage.").

that Defendant has a dedicated position for baggage scanners. For Plaintiff to be entitled to an accommodation limiting her work to baggage scanning, she must allege with factual foundation that she was qualified to be a ramp employee with Defendant United at the time she requested her accommodation.[9] Plaintiff makes no such allegations. To the contrary, despite acknowledging that lifting 50 pounds is an essential function of the ramp employee position,[10] Plaintiff admits that she was unable to lift even light amounts of weight following her accident.[11] Plaintiff alleges in the Complaint that her doctor did not clear her for work until May 2015, three months after her last alleged request for accommodation in February 2015. Because the Complaint lacks adequate factual allegations to support a reasonable inference that Plaintiff was a "qualified individual" within the meaning of the

---

[9] *See Green v. Medco Health Sols. of Texas, LLC*, 947 F. Supp. 2d 712, 723 (N.D. Tex. 2013), *aff'd sub nom.*, 560 F. App'x 398 (5th Cir. 2014) ("The issue of whether a plaintiff is "qualified" for her position appears to be determined at the time of the adverse employment action.") (citing *Morton v. GTE N.*, 922 F. Supp. 1169, 1178 (N.D. Tex. 1996), *aff'd*, 114 F.3d 1182 (5th Cir. 1997); *Cato v. First Fed. Cmty. Bank*, 668 F. Supp. 2d 933, 946 (E.D. Tex. 2009) ("To assert a claim under the ADA's accommodation provisions, Plaintiff must show: . . . that she was a qualified individual with a disability at the time the request for accommodation was made.").

[10] Complaint [Doc. # 1], ¶ 9. *See also id.*, ¶ 12(d) ("Requiring [P]laintiff to lift 99 lbs. to return to work is nearly 49 pounds more than [D]efendant requires for any new hire in the same [ramp employee] position.").

[11] *Id.*, ¶ 9 ("Plaintiff could not lift even a pot on the stove to cook or bend to do household chores like laundry or make the bed. In the first few weeks after the accident, [P]laintiff needed assistance getting dress[ed].").

ADA at the times she requested accommodation, she has not pleaded an actionable failure to accommodate claim.[12]  Accordingly, the Motion is **granted without prejudice to repleading** with respect to the failure to accommodate claim.[13] Plaintiff is reminded that any amended complaint must meet the strictures of Federal Rule of Civil Procedure 11.

### C. Retaliation

Plaintiff's final claim is for retaliation under the ADA.  In support of this claim, Plaintiff alleges four separate incidents or series of events of retaliation. Only two are in issue in the Motion.[14]  First, Plaintiff contends that she was

---

[12]  Assuming *arguendo* that Plaintiff was a "qualified individual," her failure to accommodate claim arguably also is deficient because it essentially criticizes Defendant for refusing to allow her to only perform certain essential functions of the ramp employee role, *i.e.*, scanning baggage, and relieve her from performing others, *i.e.*, lifting.  Fifth Circuit precedent is clear that an employer is not required under the ADA to modify a position's essential functions or relieve an employee from having to perform those essential functions.

[13]  In her Response, Plaintiff alleges for the first time that:

> At the time of Plaintiff's injury and even today, one of the main ramp employees' duties is to scan bags.  At one point, defendant had employees assigned to shifts where all those particular able-bodied employees were required to do is scan bags.  To date, Defendant's [Houston] hub still has employees in its bagroom area that sit at an induction belt and their only assignments is to scan bags loaded on the belt by other employees during their shift.

Response [Doc. # 15], ¶ 14(d).

[14]  Plaintiff originally also asserted a retaliation claim based on Defendant's alleged refusal to reinstate her medical benefits after she returned to work in September
(continued…)

11

retaliated against "after filing an ethic[s] complaint with how HR refused to investigate a fraud incident where" Plaintiff's picture was used without permission in connection with a work fundraiser.[15]  Specifically, Plaintiff alleges that as a result of her ethics complaint, she was "called into the office with her union rep every month" between March 2017 and July 2017 "for an attempt at writing her up for attendance."[16]  Second, Plaintiff contends that when she attempted to appeal her attendance write-ups, the appeal process was tainted by delays and conflicts of interest on the part of Defendant.[17]  Defendant persuasively argues that neither of these incidents can serve as a basis for an ADA retaliation claim because neither has any bearing on a protected activity under the ADA.

---

(continued…)
2015 until she agreed to pay for coverage for all of 2015, but has abandoned this theory.  Response [Doc. # 15], ¶ 15 ("Plaintiff is not challenging Defendant's motion to dismiss the claim for retaliation based on Defendant refusing to reinstate plaintiff's health benefits.").  Accordingly, the Motion is **granted** with respect to that claim, which is **dismissed with prejudice**.

Plaintiff also asserts a retaliation claim that Defendant subjected her to an allegedly harassing interview as part of its internal investigation into her EEOC charge of discrimination.  Defendant does not argue in the Motion that this claim is subject to dismissal at this time.  Accordingly, the Court does not reach the sufficiency of that claim.

[15]  Complaint [Doc. # 1], ¶ 15.

[16]  *Id.*

[17]  *Id.*, ¶ 16.

"To establish a prima facie case of retaliation under the ADA . . . a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "By its own terms, the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008) (quoting *Krouse v. Am. Sterilizer*, 126 F.3d 494, 502 (3d Cir. 1997)). Plaintiff's retaliation claims, which expressly relate to an ethics complaint she filed regarding the "fraudulent" use of pictures of her without her consent and to her challenge to allegedly unfair discipline as a result of that ethics complaint, bear no relationship whatsoever to the ADA. Neither incident implicates Plaintiff's alleged disabilities or the disability-related charge of discrimination she filed with the EEOC. Said differently, neither incident involves any unlawful practice or protected activity under the ADA. Plaintiff cites no authority, nor makes any argument, to the contrary. Plaintiff therefore has failed to allege adequately the first element of her ADA retaliation claim based on her ethics complaint and any discipline or appeals related thereto. The Motion is **granted**

13

with respect to these two ADA retaliation claims theories and they are **dismissed with prejudice**.

IV. **CONCLUSION**

For the foregoing reasons, it is hereby

**ORDERED** that Defendant United Airlines, Inc.'s Motion to Dismiss in Part [Doc. # 7] is **GRANTED** with respect to Plaintiff's claim for failure to accommodate, which claim is **DISMISSED WITHOUT PREJUDICE**. Plaintiff is **GRANTED LEAVE** to amend her Complaint to replead this claim. The Court will set a deadline for an amended pleading at the pretrial conference in this matter. It is further

**ORDERED** that Defendant United Airlines, Inc.'s Motion to Dismiss in Part [Doc. # 7] is **GRANTED WITH PREJUDICE** as to Plaintiff's claims for retaliation based on (i) Defendant's alleged refusal to reinstate her health benefits, (ii) Defendant's disciplining Plaintiff for her ethics complaint, and (iii) Defendant's conduct regarding her appeal of that discipline. It is further

**ORDERED** that in all other respects, Defendant United Airlines, Inc.'s Motion to Dismiss in Part [Doc. # 7] is **DENIED**.

SIGNED at Houston, Texas, this 27th day of **June, 2018**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE